JESUP and another vs. CITY BANK OF RACINE and others.

| 14 | 331 |
| 83 | 237 |
| 14 | 331 |
| 89 | 214 |
| 14 | 331 |
| 110 | 7140 |

A resolution of the board of directors of a railroad company, authorizing the
president, in general terms, to execute a mortgage upon the road, but not
indicating any of its conditions or covenants beyond saying that it was to
secure bonds to be issued by the company "running fifteen years, with semi-
annual interest," did not authorize the president to insert a stipulation in
the mortgage and bonds that the principal sum should become due, at the
option of the holder, upon default in the payment of the interest.

The president would have had an implied authority to insert that provision if it
were usual to do so in such instruments; but being unusual there was no
such implied authority.

June Term,
1861.

JESUP et al.
v.
CITY BANK OF
RACINE et al.

Several years before the passage of the resolution above referred to, a resolution had been passed by the board authorizing the president and another person, jointly or severally, to make loans for the company, and for the purpose of securing them, to execute such bonds or agreements, and to bind the company in such manner as they should deem advisable, *Held*, that the power to insert the condition making the principal due upon failure to pay interest, could not be derived from that resolution, it not having contemplated the execution of the mortgage in question, but having been passed for an entirely different purpose.

*Held*, also, that the bonds and mortgage were valid except as to the provision so inserted without authority. The rule in such cases is, that where an agent adds something beyond his authority, the excess will not invalidate that which may well stand without it.

If the board of directors of the railroad company had subsequently ratified the bonds as issued, that would have rendered them valid as to all their provisions. But there was in this case no sufficient evidence of such ratification.

Where the bonds of a company are pledged by it as collateral security for its own indebtedness, in a smaller amount than the par value of the bonds, and the pledgee still holds them, he is entitled to recover from the company no more than the amount secured by the pledge.

After the repeal of the statute authorizing it, the legal cause of action on a note or bond could not properly be joined with the equitable one to foreclose the mortgage, unless both causes of action affected all the parties, according to the provisions of the Code on that subject.

Where some of the defendants are made parties as subsequent incumbrancers only, they are not affected by the cause of action on the note or bond.

But unless the objection for misjoinder is taken by demurrer in the court below, it is waived. *Cary vs. Wheeler*, ante, p. 281.

Although a subsequent incumbrancer cannot contest the propriety of a judgment against the mortgagor, who did not appeal, without showing that he was or probably might be aggrieved by it if allowed to stand, yet where it appears from the complaint that the mortgagor is an insolvent corporation, that executions against it have been returned unsatisfied, that proceedings by sequestration and creditor's bill have been instituted against it, and that the creditors are struggling to save themselves against each other, the court will assume that the subsequent incumbrancers have a sufficient interest in the amount of the judgment against the mortgagor to enable them to contest it.

APPEAL from the Circuit Court for *Racine* County.

This was an action to foreclose a second mortgage upon the Racine and Mississippi Railroad. The mortgage was executed in the name of the Racine & Mississippi Railroad Company and under its common seal, by H. S. Durand, its president, and bore date January 1, 1857, but its execution was acknowledged by Durand June 27th, 1857. It was given to secure seven hundred bonds executed in like manner in the name of said company, for $1,000 each, which bore date

June Term,
1861.

Jesup et al.
v.
City Bank of
Racine et al.

January 1, 1857, and were payable January 1, 1872, to *M. K. Jesup* and *C. B. Raymond* or bearer, with interest at 8 per cent. per annum, payable semi-annually, with an agreement expressed in each bond that if such interest should not be paid on the day it should fall due and be lawfully demanded, and should remain due for sixty days thereafter, the principal sum should, at the option of the holder, become immediately payable. The mortgage contained a provision that if the company should fail to pay the interest on any of said bonds at the time it should become due and be demanded, then after sixty days from such default, upon the request of the holders of said bonds, the said *Jesup* and *Raymond*, their successors, &c., might take possession of the mortgaged premises, or at the written request of the holders of at least ten of said bonds, should cause the premises to be sold at public auction, after forty days notice, &c., but that nothing therein contained should prevent the mortgagees, immediately upon the default of payment of the principal or interest of any of said bonds, from adopting any other legal or equitable remedies not specified in the mortgage, for foreclosing the same.

The railroad company made no defense to the action, but the *City Bank of Racine* and sundry others, who were made defendants as subsequent judgment incumbrancers, answered stating the amounts and dates of their respective judgments against the company, upon which executions had been returned unsatisfied, denying that said company ever authorized the issuing of the bonds or the execution of the mortgage mentioned in the complaint, and alleging that if any of said bonds had been disposed of by any officer of the company, they were so disposed of without any authority from the board of directors.

On the hearing of the cause, July 17, 1860, the evidence as to the execution of the mortgage and bonds by the company, and as to the disposition which had been made of the bonds, was in substance as follows: 1. A resolution of the board of directors of the company, passed July 3, 1857: "Resolved, that the president of this company be, and is hereby authorized to execute a mortgage upon the road, ap-

June Term,
1861.

Jesup et al.
v.
City Bank of
Racine et al.

purtenances and franchises of the company, for the purpose of securing the payment of $700,000 of eight per cent. convertible bonds to be issued by this company, running fifteen years, with semi-annual interest warrants attached, principal and interest payable at the office of, &c.; that said mortgage be made to such trustees as the president may select," &c. 2. A resolution of the board, passed May 11, 1853, appointing Henry S. Durand and Marshall M. Strong agents and attorneys of the company, either jointly or severally, for and in behalf of and in the name of the company, to make loans of money of any person or persons, and thereupon to execute and deliver in the name of the company such bonds, contracts or agreements as they or either of them should deem advisable, and to pledge, hypothecate or mortgage any bonds, securities or other property to secure such loans, and empowering them or either of them to bind said company in any manner and upon any terms which they should deem advisable for the purpose of raising money in any manner for said company. 3. A resolution of the board, passed April 3, 1856, appointing the president the fiscal agent of the company, empowering him to purchase such equipments for the road as the board might direct, to purchase all necessary materials for the car shop, and contract for all necessary transportation for the company. 4. A resolution passed December 7th–8th, 1858: "Resolved, that all the securities now in the control of the company, together with all mortgages and securities hypothecated with any and all parties, be and the same are hereby appropriated and pledged to the individual indorsers of the paper of this company or for the protection of personal paper given for the benefit of the company; and said indorsers are hereby authorized to use the same for their protection *pro rata*." After the mortgage and one of the bonds had been read in evidence, H. S. Durand testified that he had been president of the company ever since its organization;    t seven hundred bonds were executed, each of which ꝛ    f the same description as that which had been read in ᴄ      ᴇe, and all were secured by said mortgage; that the boᴌ.    ᴇear date the 1st of January, 1857, and were executed about ᴛne time

June Term,
1861.

Jesup et al.
v.
City Bank of
Racine et al.

they bear date; that the bonds were finally disposed of as follows: 51 were sold in payment of debts of the company; 498 were pledged to different persons mentioned by the witness, as collateral security for certain debts of the company (the amount pledged being usually about double the amount of the indebtedness;) that the balance of the bonds were held by one Allen in trust for sundry indorsers of the company's paper to the amount of about $170,000; that the pledge to Allen was made about a year before the trial, and most of the others in 1857; that the witness had received notice of the sales of 186 of the bonds by the pledgees, but had no knowledge otherwise of the sales; that only $5,000 had been paid on the indebtedness for which the various pledges were made; that the witness had "authority from the board of directors to dispose of the bonds;" that he was the financial agent of the company; that the first coupons were taken off from all the bonds, and that no interest had been paid on any of them. The attorney for the plaintiff testified that he had in his possession 295 of the bonds above mentioned, belonging to sundry holders. It was admitted that there were judgments against the railroad company as stated in the answer of the defendants.

Portions of the record upon which various questions were raised, but not passed upon by this court, have been omitted in this statement.

The circuit court found as facts, among other things, that the Racine and Mississippi Railroad Company executed the bonds and mortgage as stated in the complaint; that said bonds were still outstanding in the hands of lawful holders (whose names are mentioned in the finding with the amount held by each, except as to 119 of the bonds, the names of the holders of which were not ascertained); that the interest which fell due on them January 1, 1858, and subsequently, had never been paid; that the whole principal of the bonds had become due on account of the non-payment of the interest; that there was due on said bonds $870,644 35 of principal and interest; and that the several judgments mentioned in the answers of the defendants were recovered as therein stated; and as conclusions

of law the court held that said judgments became liens on the mortgaged property at the times of their rendition; that " the bonds secured by said mortgage are a valid and subsisting lien upon all the property described in said mortgage, prior and superior to the lien" of any of said judgments, and that the plaintiffs were entitled to a judgment of foreclosure and sale of the mortgaged property situate in the state of Wisconsin, as prayed for in the complaint. The *City Bank of Racine* and the other defendants who were judgment creditors of the company, excepted to every part of the finding, except that which related to the recovery of their several judgments, and especially to the finding that the Racine and Mississippi Railroad Company executed the mortgage and bonds as stated in the complaint, and to each of the conclusions of law, except the one as to the time when their judgments became a lien. Judgment of foreclosure, and that the mortgaged property situate in the state of Wisconsin be sold, &c., and that out of the proceeds of sale the sheriff should pay to the plaintiffs the sum of $870,644 35 with accruing interest, &c., and that if the proceeds of such sale should be insufficient to pay the same, and the costs, the Racine and Mississippi Railroad Company should pay the deficiency. The *City Bank of Racine* and the other judgment creditors above referred to, excepted to the judgment and every part thereof, as being against the law and the evidence in the action, and appealed.

*Strong & Fuller*, for appellants, contended that the judgment was erroneous because, 1. The mortgage was not authorized by the resolution under which the president of the company acted, and was void. 2. A large portion of the bonds were held as collateral security by creditors of the company for debts much less in amount than the amount of the bonds so held, and no more could be due on those bonds to the holders, than the amount of their debts.

*Cary & Pratt*, for respondents:

The resolutions of May 11, 1853, and July 3, 1857, authorized the execution of the mortgage. It is said that the mortgage was in fact executed before the resolution of July 3d was passed. Then it was in the nature of a ratification of the

June Term,
1861.

Jesup et al.
v.
City Bank of
Racine et al.

mortgage as executed, in all particulars. But aside from the resolution there is abundant proof that the mortgage was ratified by the company. (1). Durand swears positively that the bonds were the bonds of the company, secured by this mortgage; and again he says, expressly, he had authority from the board of directors to dispose of these bonds. (2). The bonds were sold and pledged exclusively on account of the corporation, in payment of its debts, as security for money, as pay and security for rolling stock and materials, and as indemnity to parties who had given their personal indorsement for the company; and they were so sold and disposed of by the only appointed and authorized agent of the corporation, and by the express direction of its board of directors. (3). 'A large amount of these bonds were, by the express direction of the board of directors, placed in the hands of Judge Allen, to secure him and others for indorsements, amounting to one hundred and seventy thousand dollars or over. No stronger case of ratification, had there been no original authority, could well be conceived. And it is not the corporation that is now attempting to deny its validity, but certain judgment creditors. The whole proceedings of the company, from the time it was made, show that it was fully ratified. Angell & Ames on Corp., § 304, and cases cited.

*By the Court*, PAINE, J. This action was brought to foreclose a mortgage upon the Racine and Mississippi Railroad. It was issued to secure seven hundred bonds of $1,000 each, under the authority of a resolution of the board of directors. The resolution in general terms authorized the president to issue a mortgage, without defining any of its covenants or conditions, beyond saying that it was to secure bonds "running fifteen years, with semi-annual interest." Each of the bonds issued contained a provision that on default of paying any instalment of interest when due, and on its remaining unpaid for sixty days after demand, the whole principal sum should become due at the option of the holder.

The appellants' counsel insists that the president had no authority to insert this provision in the bonds; and we are

November 2.

June Term,
1861.

Jesup et al.
v.
City Bank of
Racine et al.

of that opinion. He would undoubtedly have had authority to insert such covenants and conditions as are usually inserted in mortgages of that kind. But we do not understand that provisions of this sort are usual. It is true they are sometimes inserted, but they are of a severe and extraordinary nature, amounting to a conditional defeasance of the entire objects of the contract, so far as the interests of one of the parties are concerned. The resolution provided for bonds "running fifteen years," which, in the absence of any qualification, means running absolutely fifteen years. But these only run conditionally for that time, and the payment of the whole sum might be enforced under them in less than one year. If conditions of that kind were usual, then the terms of the resolution would be qualified by the implied authority to insert the usual provisions; but being unusual, and there being consequently no implied authority to insert them, we think they must be considered as repugnant to the language of the resolution under which the president acted, authorizing only "bonds running fifteen years."

The counsel for the plaintiffs endeavored to support the act of the president by referring to a resolution passed by the board of directors several years before the one authorizing this mortgage, which appointed Durand, the president, and Marshall M. Strong, agents of the company, and authorized them jointly or severally to make loans for the company, and on making such loans, to execute such bonds, contracts or agreements, as they or either of them should deem advisable, for the purpose of securing such loans, and then giving them, or either of them, power to bind the company "in any manner and upon any terms which they shall deem advisable, for the purpose of raising money for said company." But it seems clear to us that the authority given in that resolution was intended to be and is properly applicable only to the objects therein provided for. They were authorized to bind the company in any manner they saw fit, in the bonds, contracts or agreements which they should give to secure the loans they were authorized by that resolution to make. The general rule requiring provisions of this character to be construed in connection with their subject matter,

and limited by it, demands this construction. That resolution was not deemed sufficient to authorize the president to execute this mortgage, but a new one was passed specifically for that purpose. And it would be very unsafe, assuming that such new one, adopted for that express purpose, contained no such authority, to transfer to this subject matter provisions in an old resolution which never contemplated this, but was passed for entirely different purposes. We are satisfied, therefore, that the president, under the authority to execute a mortgage to secure bonds running fifteen years, had no authority to stipulate that the whole principal should become due at the option of the holder on any default in paying interest. The result of this conclusion is, that the bonds are valid, with the exception of that provision. They amount to a good execution of the power without that, and the rule in such cases is, that where the agent adds something beyond his authority, the excess will not invalidate that which may well stand without it.

It was claimed by the counsel for the respondents, that even if there was a want of authority originally, still the board of directors had ratified the issuing of these bonds with that provision. If that had been done, it would undoubtedly render them valid; but we see no sufficient evidence of it. It is true Durand testifies that he had authority to dispose of these bonds. But whether that evidence was based upon his general authority as agent to dispose of all securities of the company, or upon any specific authority with respect to these particular bonds, given after they were issued, so that the directors must be presumed to have known their contents, he does not say. He may have relied entirely on his previous general authority, and if so, that would of course have been no ratification.

But even if the bonds had been valid as drawn, another serious error in the judgment would be, that it is given for the full amount of all the bonds, with interest. For the testimony shows that these bonds were pledged by the company as collateral securities for its own indebtedness, the amount pledged being usually about double the amount of the indebtedness. That being so, it is clear that no judg-

June Term,
1861.

Jesup et al.
v.
City Bank of
Racine et al.

June Term,
    1861.

Jesup et al.
    v.
City Bank of
  Racine et al.

ment should have been rendered beyond the actual indebtedness which the bonds were given to secure. In cases where they had been lawfully sold by the pledgee, the holders might be entitled to their full amount; but where the original pledgee still held them, it is obvious that he would be entitled to no more than his indebtedness, and beyond that there would be no one entitled to enforce their collection.

It appears also that a judgment was rendered against the company for the deficiency. We felt compelled to hold in the case of *Sauer vs. Steinbauer* (*ante*, p. 170,) that since the repeal of the statute authorizing it, the legal cause of action on the bond or note could not be joined with the equitable one to foreclose the equity of redemption, unless both causes of action affected all the parties, according to the provisions of the Code on that subject. And it is obvious that where some are made parties as subsequent incumbrancers only, they are not affected by that cause of action which seeks for a personal judgment against the mortgagor. And consequently in such cases no personal judgment for the deficiency could be taken. This result, if it is an unfortunate one, is owing to the repeal of the statute which has existed so long that some of the profession seem to think it ought to be held to be the law even after it is repealed, but we do not feel at liberty so to hold. But this objection, not being taken by demurrer in the court below, was waived. *Cary vs. Wheeler, ante*, p. 281.

The counsel for the respondents further claimed that the appellants, who are subsequent incumbrancers, have no right to raise the questions hereinbefore discussed, inasmuch as the company has not appealed. In the case of *Boyd vs. Sumner*, 10 Wis., 41, we held that a subsequent incumbrancer could not contest the propriety of the judgment against the mortgagor who did not appeal, without showing by some evidence, that he was, or probably might be, aggrieved by it if allowed to stand. But we think this case is distinguished from that by the fact that it does appear that these appellants would probably be aggrieved by the errors complained of. It fully appears from the complaint as well as

June Term,
1861.

the testimony, that the railroad company was in an insolvent condition; that this mortgage was subject to a prior mortgage upon the whole road; that execution after execution had been returned unsatisfied; that sequestration proceedings had been instituted, and proceedings by creditor's bill; and that the creditors of the company are struggling to save themselves against each other. In view of these facts we must assume that the appellants have a sufficient interest in the amount of the judgment against the company to entitle them to contest it.

The judgment is reversed, with costs, and the cause remanded for further proceedings.