PERSHING ET AL. v. WOLFE ET AL.

1. ADMINISTRATION—MORTGAGE—REDEMPTION.

A mortgage with power of sale cannot be executed by an administrator under an order giving power to mortgage generally, but the pres- ence of such unauthorized condition does not necessarily invalidate the instrument. It could still be treated as a mortgage and a decree of foreclosure should save the right of redemption.

2. AGENCY.

Where an agent who has been authorized to execute a security has exceeded his authority with reference to its terms, the instrument may be adjudged valid and the unauthorized condition rejected.

3. ESTOPPEL—RECEIVING BENEFITS—INFANTS.

Whenever money has been received from the sale of lands or other sources by one who is the custodian of an infant, and the money ap- plied to the use and benefit of the one under disability, though the procedure was irregular and void, the infant is estopped to assert its invalidity, unless the purchaser can be put *in statu quo*, or the infant has made some offer of restitution, which, if accepted, would leave the other unharmed.

4. ADMINISTRATION—MORTGAGE—ATTORNEYS' FEES.

An order of the county court empowering an administrator to execute a mortgage or deed of trust upon real estate does not, in the absence of anything to that effect, authorize a stipulation with respect to attorneys' fees.

*Appeal from the District Court of Arapahoe County.*

Messrs. BICKSLER, MCLEAN & PERSHING, Mr. W. HENRY SMITH and Mr. DAVID P. HOWARD, for appellants.

Mr. CLAY B. WHITFORD, Mr. H. A. LINDSLEY and Messrs. SULLIVAN & MAY, for appellees.

BISSELL, J., delivered the opinion of the court.

This litigation is an outgrowth of the administration on the estate of Lafayette A. Melburn. He died in 1890, leaving as his heirs the widow, Jane A., and three children, Clarence, Beatrice and Maude. The children are minors and presumably under the guardianship of their mother, Jane A., except Maude, who since the death has intermarried with Joseph Wolfe, and who prosecutes this suit in her own name and by her husband as her next friend. The widow was appointed administratrix of the estate, which comprised a large amount of real and personal property, and, speaking generally, was valued at upwards of $300,000, of which about $226,000 was realty. At Melburn's death he was carrying on a carriage business in the city of Denver, and had a large amount of stock incidental to the business. The personalty was appraised and inventoried at about $68,000. After the taking out of letters, the creditors filed claims in the county court under the statute, and about $80,000 were duly allowed. A little more than half of this amount was secured by incumbrances on property. One of them, which had been adjudicated, was presented by the Commercial National Bank, and amounted to about $24,000. This debt was secured by the pledge of various collaterals, consisting of notes, mortgages and stock, but at the time of the various transactions hereafter stated it had not been paid. Some of the mortgages matured at early dates, and the administratrix had considerable difficulty in winding up the affairs without loss, meeting the maturing claims and paying the various accumulations of interest. No fuller or more exact statement of the condition of affairs is essential. The widow continued as administratrix until October, 1893, when she resigned and was succeeded by David T. Sanderson, who is joined with Maude as plaintiff. Before Mrs. Melburn's resignation and on the 11th of July, 1891, she presented to the county court a petition setting up with much fullness and particularity the condition of the estate both with respect to its assets and

its debts, and stated facts whereon she based her claim of the necessity to borrow money on the real estate to take care of the pressing debts. She concluded her petition with a prayer for leave to incumber the realty for the purposes specified. All the proceedings in the county court are not before us. There is nothing in the record but the complaint, the answer of the defendants and their cross bill. On these pleadings, together with a demurrer to the answer and the cross complaint, the court entered judgment for the plaintiffs.

The nature and effect of this judgment will be more fully stated farther on. On the petition for leave to mortgage, process was issued and served on all persons in interest returnable at the September term. The parties appeared. A guardian *ad litem* was appointed for the minors, who took issue on the petition and prayed proof in the usual fashion. The decree which was entered on the 27th of October recites the appearance, the taking of proof and the finding of the court. Speaking generally, the decree provided that the administratrix could mortgage any or all of the real estate at a specified term and rate of interest or might lease it on specified conditions, together with other powers which are unimportant. There was a definite grant of authority to the administratrix to mortgage on the conditions antecedently named lots 1 to 10 inclusive, in block 24, McCullough's addition, for the sum of $5,000. There was a limitation in the decree which restricted the general right theretofore granted, and subjected the administratrix to the necessity of reapplying to the court for the exercise of the power as to any other property than what was designated. For some reason which is undisclosed this decree seems not to have been entirely satisfactory and the court took further action on subsequent dates, to wit, in November, on the 5th, 17th, and 21st. Each of these later decrees appears to have been entered as part and parcel of the original proceedings, but in some particulars the judgments varied from the first decree, though there was no change made in the specification of the property on which the security might be given. These subsequent entries, in

place of directly conferring power to mortgage, gave the administratrix the right to execute either a mortgage or a trust deed on the property. In the exercise of this power the administratrix negotiated a loan with Martha R. Pershing. On the 22d of November, 1892, she borrowed $5,500, and gave a note promising five years from the date to pay the sum to Mrs. Pershing with interest at eight per cent, payable quarterly, according to twenty coupons which were attached. The note provided that in case of a failure to pay the interest or any part of the sum payable by the terms of the obligation the party at her option might declare the whole sum due. To secure this note the administratrix executed a trust deed in the usual form common to this state, whereby she conveyed the described premises to James H. Pershing, as trustee, with authority to sell in case of default. This deed likewise contained a provision giving the option to the beneficiary to declare the whole sum due on a failure to pay the interest or on breach of any of the other conditions contained in the deed. The trustee was likewise given the power to sell by giving four weeks public notice by advertisement, making the sale at the door of the courthouse. There was a default in the payment of some of the legitimate charges under the arrangement and Mrs. Pershing exercised her right to declare the whole sum due, and at her request the trustee advertised the property for sale. Under the notice the sale would have occurred on the 18th of September, 1893, less than a year from the date of the original transaction. Whereupon Maude in her own name and by her husband as her next friend, and Sanderson as administrator, filed a bill in the district court setting up these various matters, alleging the invalidity of the proceedings in the county court and prayed a decree for a perpetual injunction to restrain Mrs. Pershing from the enforcement of her note or its security, that they might be declared void, and for general relief. The only persons made defendants in that bill were Mrs. Pershing and the trustee and his successor. The defendants answered and filed a cross bill. No attempt will be made in this statement to separate

and assign the matters of fact stated in those pleadings, for they were both demurred to, and on the demurrer the court rendered final judgment.

The other important facts which will be assumed for the purposes of this decision, since they are conceded by the demurrer, are substantially the good faith of Mrs. Pershing in the transaction, the situation of the estate and some other orders of the county court and the ultimate disposition of the money. The loans were made on the strength of the decrees of the county court, and the deed was accepted after it had been approved by the county judge. Prior to the attempt to exercise the power of sale, the owner of the note presented it to the county court for allowance as a claim against the estate, and it was duly allowed. The existence of the claim filed by the Commercial National Bank is conceded, and the money which was borrowed of Mrs. Pershing was applied to the liquidation pro tanto of this adjudicated claim, and to that extent reduced the debts which had been filed and allowed. Nothing further of radical consequence or which would form a basis for the judgment which the court entered is deducible from the pleadings. Thereon the court entered a judgment perpetually restraining the defendants from enforcing their security according to the prayer of the complaint. It is a little difficult to exactly apprehend the scope of the judgment. The plaintiffs prayed that the trust deed and note be adjudged void and the defendants be restrained from enforcing the security. In his opinion, the judge who tried the case held the note not to be a legal claim, and the security to be invalid. Under some circumstances we might be compelled to determine whether the actual judgment entered, since it is as to its terms only ascertainable on the inspection of the prayer of the complaint, went so far as to adjudge the note invalid and to restrain its collection either through the ordinary proceedings of the county court or otherwise. Our conclusions render this unnecessary. We have stated all the facts essential to our conclusion.

The judgment cannot be upheld. There is not enough

before us to permit the adjudication of every proposition which has been argued by counsel or which is presented by the record. It is likewise impossible for us to decide all the questions which are suggested by the proceedings in the county court. There is nothing in the record but the petition and the several decrees, under some one of which the administratrix in the execution of her supposed authority executed the note and trust deed and delivered them to Mrs. Pershing, who advanced the money. The three decrees entered in November may all be invalid or they may be entirely legal. This we cannot decide without the record of that case before us, whereby we can ascertain the existence or the nonexistence of jurisdiction and power on the part of the county court to further adjudicate the matters presented by the petition beyond the original entry of the 27th of October, which is styled in the argument "the first decree." While we very readily appreciate the legal difficulties suggested by the procedure and are quite unable to understand the court's action, the record lacks what is absolutely prerequisite to even a conjecture concerning it. The proceedings under the original petition appear to have been regular. The petition itself seems to be sufficiently full to warrant the court to take action under it, and while the decree of October 27th is open to grave criticism because of the very extensive power which it undertook to grant, the specific right conferred is not objectionable. It undertook to give the administratrix power to borrow a sum of money on certain lots on definitely stated terms. With the wisdom of the decree or the justness of the procedure we are not concerned. The substantial variation between the first and subsequent decrees with reference to the character of the security will really be disposed of by our conclusions respecting it. There is undoubtedly a very wide difference between the rights and obligations of the grantor, trustee and *cestui que trust* in a trust deed, and those of a mortgagor and a mortgagee under a mortgage. It is quite true the authorities generally place the two upon substantially the same basis and hold the trust

deed to be simply a mortgage with a power of sale, and therefore the substantial legal equivalent of a mortgage containing a like power. Jones on Mortgages, secs. 62, 1769; *Denver Brick & Mfg. Co. v. McAllister*, 6 Colo. 261; *Barth v. Deuel*, 11 Colo. 494.

At the date of the giving of the deed the chief difference in this state came from the right of redemption which enured to the defendants when a mortgage was foreclosed which contained no power of sale. The original decree contained no definite provision respecting this matter. Its legitimate construction would be to give the administratrix power to mortgage generally. Under it a mortgage with a power of sale could not be given. In this respect there is a wide difference between the original and the three subsequent decrees. To grant to the representative the power to execute a trust deed or a mortgage containing a power of sale would not be a wise or a prudent exercise of authority on the part of the county court, and in this particular the later decrees are open to criticism.

The presence of this condition in the deed would not necessarily invalidate it. If the power to sell was eliminated from the trust deed, then of necessity foreclosure would be the only remedy whereby the security could be enforced. It would then be brought within the purview of the authority which adjudges the trust deed to be the legal equivalent of a mortgage, and would thereby secure to the estate the same legal right of redemption which it would have enjoyed under an exact and literal compliance with the terms of the original decree. Where an agent who has been authorized to execute a security has exceeded his authority with reference to its terms, the instrument has been adjudged valid and the unauthorized condition rejected. Jones on Mortgages, sec. 76; *Jesup v. City of Racine et al.*, 14 Wis. 331.

Some importance seems to be attached to the proceeding by the holder of the note in presenting her claim to the county court for allowance. This ought not to affect her right to enforce the security if otherwise her privilege remains

unimpaired. The presentation of the claim and its allowance simply determined its validity as a charge on the funds of the estate. We are not at all certain that this procedure was essential, though had the note and mortgage been given by the decedent in his lifetime it would have under the statute been a condition precedent to a suit for its enforcement. Session Laws of 1889, page 474.

We need not decide whether under the present circumstances a suit would lie without a compliance with this statute, which does not in terms refer to such securities, because, by a wise prevision, the holder presented the claim for allowance. This circumstance gives great weight to the appellant's contention that her claim is a just one. The note was and is a legitimate charge against the estate, which Mrs. Pershing should have a right to collect. There is thus left but one naked question, whether she can enforce it otherwise than by sharing with the creditors in the ultimate distribution of the assets, or whether she may resort to her security to collect her money. Intimately associated with this question, and really as a preliminary to it, arises another which respects the power of the plaintiffs to institute the present suit with no other allegations than those contained in their complaint. It will be observed the suit was brought by one of the heirs and the administrator against the grantor, trustee and *cestui que trust* to cancel the note and the security.

The sole basis of the bill was the alleged invalidity of the security which in turn was established if at all by the demonstration of the invalidity of the decree of the county court under which they were executed. The plaintiffs did not aver any misuse or misapplication of the money nor its diversion from the legitimate uses of the estate by the administrator. It was in effect conceded the administrator borrowed the money and used it to pay other debts. Under the allegations of the answer and the cross complaint the plaintiffs admitted by their demurrer the legitimate application of the money to the reduction of a debt which the estate owed. The money was paid to the Commercial National Bank and reduced its

allowed claim to that extent. The plaintiffs did not offer to return the money, but sought a judgment declaring the note invalid and the security unenforceable. This very inequitable result should not be permitted except under the pressure of legal principles from which there is no escape. We find no such difficulty. Why the administrator was joined is not clear. There is nothing in the complaint which shows a cause of action in his favor with reference to this security or this loan. The estate is evidently solvent, there is enough property remaining to satisfy the claims of all creditors, and so far as the administrator is concerned he was and is unharmed by the proceeding. Further, he holds his present position as a successor in office to the original administratrix, Mrs. Melburn, and on all recognized principles, leaving out of consideration any question of the misappropriation of funds, took the estate as he found it and was bound by the proceeding of his predecessor, so long as what she did neither diminished the personal estate nor so far reduced the realty as to prevent the liquidation of all the legitimate debts which it owed. Neither was he a proper party to a bill of this description. This question, however, was not raised by either demurrer or answer, and his presence in the suit is not a matter of substantial objection. Whether one of the heirs could maintain such a suit without making the other heirs either plaintiffs or defendants might under some circumstances become a very important question. This difficulty is obviated by the cross complaint filed by the defendants, who have attempted to bring into the suit all the other heirs, that there may be a complete adjudication of the matter. This will obviate any difficulty respecting parties, and the subject will not again be referred to. All incidental matters are thus completely disposed of, and we can return to the discussion of the principal propositions. The nature of an estoppel does not preclude its application wherever it tends to work out an apparent equity and to do justice between the parties. The infancy or the disability of the party against whom the doctrine is invoked furnishes no obstacle to its operation. It has been

applied in many cases where at the time of the occurrence the person who is to be bound by the act was then completely under some recognized disability. It has been applied in all classes of cases, but usually in those where money has been received from the sale of land or from some other source by one who was the custodian of the person under disability, and who applied the funds to the use and benefit of the infant. Wherever this has been done, even though the procedure was irregular and void, the infant has been estopped to assert its illegality unless the purchaser can either be put in *statu quo* or the infant has made some offer of restitution which, if accepted, would leave the other unharmed. *Commonwealth v. Shuman's Administrators*, 18 Pa. St. 343; *Robertson v. Bradford*, 73 Ala. 116; *McClanahan et al. v. West et al.*, 100 Mo. 309; *Goodman v. Winter*, 64 Ala. 410.

It was no objection then to the application of the doctrine of estoppel that Mrs. Wolfe was a minor at the time of the transaction, and as such by her next friend has brought this suit. With this difficulty removed the balance of the way is entirely clear. Under our statutes the heirs to real property take it, in a general sense, subject to the lien of the creditors for the payment of the debts which the decedent owed at the time of his death. These debts are in no strict sense liens on the property or charges against the estate. It descends to the heirs, however, subject to the right of the creditors to enforce their claims in the proper forum by a sale of the realty whenever the personalty is insufficient. In this general, though not technically accurate sense, then, the heirs take the lands subject to these claims. Wherever property has descended subject to a definite lien, and the representative without right has borrowed money and satisfied this claim, it has almost universally been adjudged the heir could not recover from the purchaser without repaying the purchase price. An offer to do this must not only be alleged, but must be proven and kept good. Many of the cases have proceeded on the hypothesis that under such circumstances equity would not entertain a bill filed by the heir to recover

the estate unless the purchaser was subrogated to the rights of the original holder of the incumbrance, and could thereby secure the return of his money. The doctrine has been gradually extended and the manifest equity has been so thoroughly recognized as to include within its scope those cases where the administrator has proceeded irregularly and received money which has been applied to the satisfaction of legitimate claims against the estate. Under such circumstances the heir has not been permitted to redeem except on payment of the sum borrowed, even though it has gone to satisfy some other debt. It has been held enough to show the money has been legitimately applied to the liquidation of just claims with which the estate was chargeable. *Valle's Heirs v. Fleming's Heirs,* 29 Mo. 152; *Schaefer et al. v. Causey,* 8 Mo. App. 142; *Jones et al. v. Manley et al.,* 58 Mo. 559; *Detroit F. & M. Ins. Co. v. Aspinald et al.,* 48 Mich. 238; *McGee et al. v. Wallis et al.,* 57 Miss. 638; *Herron v. Marshall,* 24 Tenn. 443; *Penn v. Heisey,* 19 Ill. 295; *Jones et al. v. French et al.,* 92 Ind. 138; *Bright v. Boyd,* 1 Story, 478; *Sharkey v. Bankston,* 30 La. Ann. 891.

The present case is on all fours with these decisions. The estate owed $24,000 to the Commercial National Bank, which must be liquidated either out of the personalty or out of funds raised by the sale of the realty. The money which was borrowed from Mrs. Pershing was applied to the satisfaction of that debt. Both debts were allowed by the county court and adjudged valid claims against the estate. It would be manifestly unjust to permit one of the heirs to obtain a judgment cancelling the note or invalidating the security, and thereby to the extent of her interest in the property increase her share by the appropriation of Mrs. Pershing's money without returning it. There is no case which would adjudge the defendants disentitled to a subrogation if the money had been applied to the liquidation of an incumbrance then existing on this particular property. There is neither reason nor equity in a rule which would permit the heirs to enjoy the benefit of this money because it was applied to the payment

of a general debt and not a specific incumbrance. We therefore conclude Mrs. Wolfe could not maintain this bill in so far as it sought to cancel the note and the security without an offer to return the money.

There is no claim of a lack of power on the part of the county court to authorize the administrator to borrow money on the realty for the purposes for which this money was borrowed. It is contended the petition in some minor particulars was not in strict accord with the statutes, and therefore jurisdiction did not attach and the administrator was without the legal right to borrow the money. We are not entirely clear as to the right of the plaintiff to attack the decree of the county court in this way. The orders and judgment of the county court in matters within their jurisdiction are generally conclusive and are not ordinarily subject to collateral attack. *Bateman v. Reitler*, 19 Colo. 547. But this question, together with another which we are about to suggest, is left so much unsettled by the condition of the present record that we prefer not to express a conclusive opinion concerning it. The case must be reversed and go back for a new trial. If the plaintiff can amend her bill and allege an offer, then on the issues which will be raised the proper proof can be presented and on the whole record we can adjudge the question. If the plaintiff is unable to amend her bill, it must of necessity be dismissed, but with leave to make the offer, if she be so advised, and recommence her suit.

The remaining question is likewise of much difficulty and respects the right of the defendants to maintain their cross bill for a foreclosure of the trust deed. We must necessarily give expression to our general view of it without conclusively adjudicating the matter in all of its phases. If the original complaint be dismissed the case will then stand on the cross bill and the answers which may be put in. Evidence will be introduced, and on the final hearing the record will present enough to enable any court to adjudge the questions which may be raised. We can only say the cross complaint presents enough to compel an answer. The heirs must all be brought in and made parties, so that the whole

matter may be determined in one suit. It would appear the proceedings of the county court on the original petition culminated in a decree entirely within its jurisdiction and power, under which the administrator could borrow money and execute a mortgage upon the particular property involved. If this be so, then the instrument which was executed could be taken to be a mortgage, which would give the plaintiffs in the cross bill the right to obtain a judgment of foreclosure and enforce their claim by a sale of the property. The condition which differentiates the instrument from a mortgage would thus be eliminated, and the heirs would have the same right of redemption that would come had a mortgage been executed according to the terms of the original decree. The parties have come into equity, and under the circumstances we do not think them entitled to enforce their security under the power of sale, but they must be remitted to the rights which would accrue under foreclosure. There is another condition, with respect to attorneys' fees, which must of necessity be disregarded, because there is nothing in any of the court's judgments which would authorize the inclusion of this onerous condition. We are not able to go farther in adjudicating the rights of the parties, and can only in this general way point out the course which the appellants must pursue. We simply hold they are entitled to their money, and that the plaintiff may not maintain her suit without an offer to repay it. We do not directly nor conclusively adjudge the appellants entitled to foreclose. We simply say, as the case is now presented, it appears to us they have that right. The whole aspect of the case may be changed by the answers and by the proof which the parties may offer. We have only taken this course to save the estate further litigation and expense if the thing be possible.

For the errors committed by the trial court in giving the plaintiff judgment and sustaining the demurrer to the answer and cross complaint, the judgment will be reversed and the case remanded for further proceedings in conformity with this opinion.

*Reversed.*