SALLIE A. YOUNG *et al.*

*v.*

SUSAN C. WITTENMYRE, Admx.

*Filed at Ottawa January 19, 1888.*

1. ADMINISTRATION OF ESTATES—*sale of land to pay debts—when allowable.* In this State the personal property left by a decedent is the primary fund for the payment of all debts against his estate, and it must appear that the personal estate is insufficient to pay the debts, before real estate can be sold for that purpose.

2. A person died having his domicile in this State, and personal property in Iowa, and letters of administration in this State were granted to his widow. The appraisers fixed her specific allowance at $2080. She also took out letters of administration in the State of Iowa, and collected money enough to pay all the debts of the estate, including her specific allowance and the costs of administration, but instead of paying her award, she paid $1900 to the heirs, of her own accord, and not by the procurement of the other heirs, leaving the sum due her on the award of $1500, without any personal property remaining with which to satisfy the same; and then filed a petition in this State to sell real estate to pay the debts of the estate: *Held,* that as the personal estate was more than sufficient to have paid all the debts of the estate, if properly applied, she was not entitled to an order for the sale of real estate.

3. SAME—*of the general administration, and that which is ancillary— administration in different States.* The administration granted in the State of a decedent's domicile at the time of his death, is the principal administration, and that granted in another State is but ancillary to the other.

4. Where the principal administration of an estate is had in this State, and ancillary in another State, it will be the duty of the administrator in such other State to collect all debts due the estate there, and convert all assets within that juridiction into money, pay all debts established against the estate there, and, after all such debts are satisfied, to pay the balance to the administrator in this State, so that it may be disposed of and distributed under the authority of the county court of this State.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Probate Court of Cook county; the Hon. J. C. KNICKERBOCKER, Judge, presiding.

Mr. FILLMORE WEIGLEY, and Mr. ROBERT L. LYONS, for the appellants:

When an administrator has control over assets sufficient to pay debts and costs of administration, he can not sell land for that purpose, the personal estate being the primary fund. *Hollman* v. *Bennett,* 44 Miss. 322.

The administration in Iowa was ancillary to the administration here, and after the payment of all debts established in Iowa, the administratrix should have paid the debts here, before any distribution. *Record* v. *Howard,* 58 Me. 275; *Fay* v. *Havre,* 3 Metc. 109; *Jennison* v. *Hapgood,* 10 Pick. 77; *Clark* v. *Blackington,* 110 Mass. 369.

The probate court erred in decreeing a sale without first requiring the petitioner to make an inventory of and account for all the personal estate which had come into her hands, in this State or elsewhere. Rev. Stat. chap. 3, sec. 51; *Estate of Butler,* 1 Tucker, 87.

The statute prescribing what facts must be set forth in the petition are clearly mandatory, and unless the petition shows a state of facts contemplated by the statute to authorize a sale, and such facts are sustained by proof, no decree of sale can be made. *Walker* v. *Diehl,* 79 Ill. 473; *Lynch* v. *Hickey,* 13 Bradw. 139.

Messrs. MONTGOMERY & SMITH, for the appellee:

The heirs can not object to the order of distribution in Iowa, as they took and still retain the same. In the absence of any tender to make good what they took from the estate, the probate court could do nothing else than find the deficiency and decree as it did.

An estate can be settled and distributed by the court having the ancillary administration. *Mackey* v. *Cox,* 18 How. 100; *Carmichael* v. *Ray,* 5 Ired. Eq. 365; 3 Redfield on Wills, 27; 3 Williams on Executors, 1767, note m.

Real and personal estate being without the State, need not be inventoried. Jones & Cunningham's Pr. 37; *Sherman* v. *Page*, 85 N. Y. 123; *Judy* v. *Kelly*, 11 Ill. 211; *Shultz* v. *Pulver*, 11 Wend. 363.

The rule undoubtedly is, that where there are two administrations of a single estate,—one in the place of the domicile of the testator or intestate, and the other in a foreign jurisdiction,—whether the courts of the latter will decree distribution of the assets collected under the ancillary administration, or remit them to the jurisdiction of the domicile, is not a question of jurisdiction, but of judicial discretion, depending upon the circumstances of the particular case. *Despart* v. *Churchill*, 53 N. Y. 192; *Parsons* v. *Lyman*, 20 id. 103; *Harvey* v. *Richards*, 1 Mason, 380; *In re Hughes*, 95 id. 55; *Mackey* v. *Cox*, 18 How. 100; *Carmichael* v. *Ray*, 5 Ired. Eq. 365; *Wright* v. *Phillips*, 56 Ala. 69; 3 Redfield on Wills, 27; 3 Williams on Executors, 1767, note m.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This is an appeal from a decree of the probate court of Cook county, which ordered the sale of certain real estate to pay the debts of the estate of William Wittenmyre, deceased.

William Wittenmyre was a resident of Cook county, and died intestate, in Cook county, January 4, 1879, leaving a widow, Susan C. Wittenmyre, appellee here, and two children by a former wife, Sallie A. Young and Charles A. Wittenmyre, his only heirs-at-law. On the 14th day of January, 1879, the widow, on her petition, was appointed administratrix of the estate by the probate court of Cook county. Wittenmyre, prior to his death, had been engaged in business in Appanoose county, Iowa, and at the time of his death was possessed of a large amount of personal property in that county, consisting mainly of a stock of goods in a general store. In the month of February, 1879, the widow was appointed, by the circuit

court of Appanoose county, Iowa, administratrix, to administer upon the assets in that State. This appointment was made under a section of the statute of Iowa, which reads as follows: "If the administration of the estate of a deceased non-resident has been granted in accordance with the laws of the State or country where he resided at the time of his death, the person to whom it has been committed may, upon his application, and upon qualifying himself in the same manner as is required of other executors, be appointed to administer upon the property of the deceased in this State, unless another has been previously appointed." McLain's Stat. 1882, sec. 2368, p. 642.

On the 1st day of July, 1879, the administratrix filed, in the probate court of Cook county, an inventory, in which she inventoried the lands described in the petition. The inventory then stated "that no other property had come to the possession or knowledge of the administratrix." On the same date, the appraisers made a return to the court that no property belonging to the estate, subject to appraisement, had come to their sight or knowledge. They also reported that they had estimated the widow's award at $2080. The allowance seems to have been approved by the court. No report of the assets in Iowa was ever made to the probate court in Cook county, and, so far as appears, after the filing of the inventory and appraisement bill containing the widow's allowance, as heretofore stated, no further steps were taken in the probate court of Cook county in the settlement of the estate, until this petition to sell real estate was filed. The administratrix, however, proceeded to settle up the estate in Iowa. August 15, 1879, she filed a report, which was approved on December 8 following. January 27, 1880, she filed another report, in which she showed that she had distributed $2850 of the personal estate in Iowa, —$950 to herself, as widow, and $950 to Sallie A. Young, and $950 to Charles A. Wittenmyre, as heirs. This report was approved. On the 25th day of January, 1881, the administratrix made a final report, and was discharged. On the 11th

day of March, 1881, this petition was filed to sell real estate in Cook county to pay the widow's award, and a claim of $75 which had been allowed, and also the costs of administration, estimated at $250. On the hearing, it turned out that the claim of $75 had been paid from the assets in Iowa, and the administratrix had been allowed a credit for the amount. The widow's award was reduced to $1500, and the court found the deficiency of personal estate to be $1030, and decreed a sale of real estate to pay such deficiency.

It is not claimed that there are any debts against the estate remaining unpaid, except the widow's allowance, and it is also an undisputed fact that the administratrix had in her hands an amount arising from the assets in Iowa, after the payment of all debts in that State, much larger than her specific allowance, which she of her own accord distributed between herself, as widow, and the two heirs. Under such circumstances, has she the right to obtain a decree to sell real estate to pay her specific allowance? In this State, the personal property is the primary fund for the payment of all debts against an estate, and under the terms of section 97 of chapter 3 of the Revised Statutes of 1874, it must appear that the personal estate of a decedent is insufficient to pay the debts before the real estate can be sold for that purpose. Here, if the personal assets in Iowa are to be taken into consideration, personal property which passed into the hands of the administratrix was ample to fully pay all just claims against the estate, and no satisfactory reason was shown, on the trial in the probate court, why the personal assets were not appropriated to the payment of debts until the debts were satisfied,—before a distribution was made between the heirs. As Cook county, in this State, was the residence of William Wittenmyre at the time of his death, the administration granted here was the principal administration, and the letters granted in Iowa were but an ancillary administration. (*Stevens* v. *Gaylord*, 11 Mass. 262.) It was no doubt the duty of the administratrix in Iowa to collect all debts

due the estate there, and convert all assets within that jurisdiction into money, and from the money pay all debts established against the estate in that jurisdiction; but after the debts in Iowa had all been paid, and a large balance was left in the hands of the administratrix, she had no right whatever to distribute such balance among the heirs in Iowa, but, on the other hand, it was her duty to bring the balance into this State, in order that it might be disposed of under the authority of the court within whose jurisdiction the deceased had his domicile. The balance, whatever it was, should have been returned to the principal administration.

This doctrine is well stated in *Jennison* v. *Hapgood*, 10 Pick. 77, as follows: "The question of domicile being thus determined, we find little difficulty in settling the question of jurisdiction. It has been settled in this court that the *lex domicilii*, and not the *lex loci rei sitæ*, must govern in the distribution of the personal estate of a deceased person among his heirs or legatees, whether he dies testate or intestate. And this distribution is to be made under the authority of the court within whose jurisdiction the deceased held his domicile, it not being competent for a court granting an auxiliary administration to order a distribution of the estate among the heirs and legatees. (*Dawes* v. *Boylston*, 9 Mass. 358.) Whether, in such case, a distribution may not be made among creditors when the estate is insolvent, we are not called upon now to decide. In the present case it is clear that the final settlement of the estate must be made within this jurisdiction."

In *Fay* v. *Haven*, 3 Metc. 109, where letters of administration had been taken out in the State of Louisiana, (the domicile of the deceased,) and also in the State of Massachusetts, where assets were left, it is said: "The administration granted in Massachusetts was merely auxiliary, and the only duty devolving upon such administrator would be to collect the assets here, and appropriate so much of the avails of the same to the payment of debts due to our citizens as would be author-

ized by the general solvency or insolvency of the estate of the deceased, and remit the balance to the place of principal administration. (*Davis* v. *Esty,* 8 Pick. 475.) It has been, I apprehend, the uniform doctrine of this court, that any other administration than that granted where the deceased had his domicile, must be considered as an auxiliary administration. (*Stevens* v. *Gaylord,* 11 Mass. 256.)   *   *   *   The rule seems to have been very generally sanctioned, that as to the property in the hands of the executor or administrator, acquired without the jurisdiction of the principal administration, he is to be held accountable for its proper application only to the legal tribunals of the State in which the principal administration was taken." The same doctrine is announced in *Probate Court* v. *Kimball,* 42 Vt. 320.

But it is said that the heirs (appellants here,) "were parties to the accounting in Iowa, and having accepted their distributive shares there, can not now be heard to say that this was all wrong." There is some force in the position of appellee on this question, and if the heirs had been instrumental in requiring appellee to make distribution in Iowa, knowing that there remained a debt here, unpaid, it may be that they might be estopped from insisting upon the defence here interposed, in opposition to a sale of property to pay the debt. But such was not the case. They did not require appellee to make a distribution of the assets in Iowa. Her action there was of her own free will. Nor does it appear that appellants knew that appellee held a claim in this State unpaid. On the other hand, appellee, knowing that she held a claim in this State, without being required to make a distribution in Iowa by the heirs or the court, voluntarily paid over money to the heirs which she ought to have retained, in payment of debts. Having done this, she is the one in the wrong, and she having had in her hands sufficient personal assets to pay all claims against the estate, both in Iowa and here, and having paid out such assets wrongfully, she can not now obtain a decree to sell real

property to pay debts which might and ought to have been paid from the personal assets.

The judgment of the probate court will be reversed, and the cause remanded for further proceedings consistent with this opinion.

*Judgment reversed.*