## Julia D. Ramsay and G. Van Hoorebeke v. E. P. Ramsay, Adm'r.

1. ADMINISTRATION OF ESTATES—*No Privity Between Administrators Appointed in Different States.*—When administration is granted in different States to different persons in respect to the same estate, no privity exists between such administrators.

2. SAME—*Diligence of Creditors in Presenting Claims.*—Under our statutes a person who proves his claim at the end of the second year after the letters of administration are granted, is considered in law as diligent as the person who proves his claim on the adjustment day.

3. SAME—*Application of the Rule, No Privity Between the Administrations of Different States.*—The rule that there is no privity between the administrators of different States, merely goes to the extent of declaring that an administrator is only answerable to the court appointing him, and if there is an ancillary administration and the estate is solvent in that jurisdiction, the debts to creditors there will be paid there instead of sending them to the domicile, and that judgments recovered against a representative in one jurisdiction are not evidence against a representative holding by appointment in another.

4. SAME—*The Administration at the Domicile is the Principal Administration.*—The administration at the domicile is the principal administration and all others are but ancillary and more or less subservient thereto, either as a matter of comity or of positive right.

5. Same—*Distribution After Debts of Creditors in Ancillary Jurisdictions are Paid.*—After the ancillary administrator has paid the debts of the local creditors, if the court appointing him orders distribution of the residue, such distribution will be made in accordance with the laws of the domicile.

6. Same—*Payment by a Non-resident Debtor to a Domiciliary Administrator When a Good Defense to a Suit by the Ancillary Administrator.*—A payment made by a non-resident debtor to a domiciliary administrator will be a good defense to a suit brought by an ancillary administrator appointed after such payment.

7. Same—*Domiciliary and Ancillary Administrators.*—The domiciliary administrator succeeds to the title of all the decedent's personal estate wherever located, while the ancillary administrator's title is limited to such assets as are within the jurisdiction appointing him.

8. Same—*Object of Ancillary Appointments—Solvent and Insolvent Estates.*—The chief object of ancillary appointments is the protection of local creditors, and when these have been paid, it is the duty of the ancillary administrator to transmit the balance of the assets to the domiciliary administrator for disposition by the courts of the domicile; but this rule holds good only in case the estate as a whole is solvent; if insolvent, local creditors are only entitled to a *pro rata* dividend, measured by all assets and liabilities, although the ancillary administrator had sufficient funds in his hands to pay such creditors.

9. Same—*No Distinction Between Resident and Non-resident Creditors in this State.*—The courts of this State permit non-resident as well as resident creditors to prove their claims against ancillary estates, leaving the question of the payment of such claims to be dealt with the question of when the solvency or insolvency of the estate is to be determined.

10. Same—*Postponement of Creditors Receiving Dividends from an Ancillary Administrator.*—A person who proves up his claim in an ancillary jurisdiction and receives a dividend from the administrator there, is to be postponed to the extent of such dividend in the distribution of the assets in the principal administration, the entire estate being insolvent.

**Claims in Probate.**—Appeal from the Circuit Court of Clinton County; the Hon. Samuel L. Dwight, Judge, presiding. Heard in this court at the February term, 1901. Affirmed. Opinion filed September 4, 1901.

**Statement.**—Rufus N. Ramsay, a resident of Carlyle, Clinton county, in this State, died intestate on the 11th day of November, 1894, leaving a large amount of real and personal property, the most of it situate in this State, but some of it situated in the State of Missouri. Defendant in error

was appointed administrator of the estate in Illinois, on the 17th of November, 1894, and Sterling Price Bond was appointed administrator of the estate in Missouri on the 8th of March, 1895.

On the 5th of February, 1895, plaintiff in error Julia D. Ramsay, widow of deceased, had a claim of $18,931.72 allowed her by the County Court of Clinton County, against the estate, and on or about the same date plaintiff in error Van Hoorebeke proved up a claim for the sum of $2,020.42 in the same court in his favor against the estate, both claimants being residents of the State of Illinois. Later, and within one year after letters of administration had issued from the Missouri court to Mr. Bond, Mrs. Ramsay proved up and had allowed to her, in the Probate Court of St. Louis, Missouri, the same claim that had been allowed to her in Clinton county, which then amounted to the sum of $19,252.40, the difference being in the accrued interest. At the same time Van Hoorebeke proved up his claim in the same court in Missouri for the amount originally allowed in the County Court of Clinton County. The Illinois court classified the claims as of the 7th class, while the Missouri court classified them as of the 5th class, as defined by the laws of that State, the laws of the two States differing as to the classification of claims.

The property in Missouri was real estate, and the administrator there sold the property under the order of the court there. At the June term, 1897, there was a final settlement of the administration in Missouri. The Van Hoorebeke claim, with interest up to that time, amounted to $2,226.15, and the Ramsay claim, with interest up to the same time, amounted to $20,591.03. The Probate Court of St. Louis ordered distribution to be made of the assets in the hands of the administrator at that place, a dividend of 12.44 per cent being paid to the 5th class creditors, giving Mrs. Ramsay $2,561.51 and Van Hoorebeke $278.03. Defendant in error, as administrator of the estate in Illinois, appeared before the St. Louis court and asked that the money in the hands of the Missouri administrator be trans-

mitted to himself, as principal administrator, for distribution under the directions of the County Court of Clinton County. The Missouri court denied the request, and plaintiffs in error received from the Missouri administrator the respective amounts above stated. No appeal was taken from the order of the St. Louis Probate Court.

Under the statutes of Missouri ordinary debts are placed in the 5th class, if presented within one year, and in the 6th class if presented after one year and within two years after letters granted.

On the 25th of June, 1900, defendant in error presented a partial report of his acts as administrator to the County Court of Clinton County. In this report he charged himself with the two items paid to Julia D. Ramsay and G. Van Hoorebeke by the Missouri administrator, and he took credit for the same amounts, as having been paid by him to said claimants, respectively. Including these two items paid by the Missouri administrator the report shows that the assets of the estate on the 25th of June, 1900, amounted to $131,810.42, and that the total liabilities of the estate to 7th class creditors, including the claims allowed to plaintiffs in error, amounted to $183,854.70, thereby showing the insolvency of the estate in Illinois.

Plaintiffs in error filed exceptions to this report; the County Court of Clinton County ordered that the administrator pay fifty cents on the dollar of the claims of the 7th class creditors, except that the respective amounts received by plaintiffs in error from the Missouri administration should first be credited on their claims as allowed, and that fifty cents on the dollar should then be paid on the balance of said two claims *pari passu* with the other creditors.

Plaintiffs in error appealed separately from the order of the County Court to the Circuit Court of Clinton County, where, by stipulation, both appeals were consolidated, and the court heard the cause on an agreed statement of facts. The Circuit Court directed the administrator to first pay all claimants, except plaintiffs in error, 12.44 per cent on their claims, to make such claimants equal with Mrs. Ramsay and

Mr. Van Hoorebeke, as to the whole estate in both Illinois and Missouri, and that the balance in the hands of the administrator be ratably distributed thereafter among all of the claimants of the seventh class.

The following sections of the Missouri Statutes were introduced in evidence on the trial:

" Section 261. When administration is taken in this State on the estate of any person, who at the time of his death was an inhabitant of any other State or country, his real estate found here, after the payment of his debts, shall be disposed of according to his last will, if he left any. * * * If there be no such will, his real estate shall descend according to the laws of this State. His personal estate is disposed of according to the laws of the domicile.

Section 262. Upon final settlement, after the payment of all debts for which the same is liable in this State, the residue of the personal estate, if any, may be distributed and disposed of in the manner aforesaid, by the court in which the estate is settled, or it may be transmitted to the administrator of the domicile of deceased, as the court thinks best.

Section 263. If the deceased dies insolvent, his estate found in this State shall, as far as practicable, be so disposed of that all his creditors here and elsewhere may receive an equal share in proportion to their respective debts.

Section 264. To this end the estate shall not be transmitted to the foreign administrator until his creditors, who are citizens of this State, shall have received their just proportion that would be due them if the whole estate, wherever found, were divided among all said creditors in proportion to their respective debts, without preferring any species of debts to another.

Section 265. No creditor not being a citizen of this State, shall be paid out of the assets found here, until those who are citizens shall have received their just proportion as provided in preceding section.

Section 266. If there be any residue, after such payment to the citizens of this State, the same may be paid to other creditors who shall duly have proved their debts in proportion to the amount due to each of them respectively.

Section 267. No one shall receive more than would be due him, if the whole estate were divided ratably among all creditors who shall have duly proven their claim in the court having jurisdiction thereof in this State.

Section 268. The balance, if any, may be transmitted to the foreign executor or administrator, or if there be none, it shall, in three years, be distributed ratably among all creditors," etc.

S. P. BOND, attorney for Julia D. Ramsay, plaintiff in error.

G. VAN HOOREBEKE, *pro se*.

M. P. MURRAY, attorney for defendant in error.

MR. JUSTICE BIGELOW delivered the opinion of the court.

The naked question presented by this record is, whether a claimant, who has received a dividend from an ancillary administration, shall be postponed in the division of assets found in the domiciliary administration, to the extent of the per cent already received by him, the estate being insolvent. It is the contention of plaintiffs in error that by their assumed diligence in having had their claims allowed in the Probate Court of St. Louis, they have gained a preference over other creditors of the estate located in the domicile of the intestate, to the extent of the foreign assets paid over to them, and that this assumed preference exists in the nature of collateral security, so that plaintiffs in error are entitled to the same percentage out of the assets located in this State that other creditors are, disregarding for the time being the amounts paid them by the Missouri administrator, provided all sums paid do not exceed the amount of their claims. To sustain this contention reference is had to such adjudications as Furness v. Union National Bank, 147 Ill. 570, and Levy v. Chicago National Bank, 158 Ill. 88, where the rule is laid down, that a secured creditor may prove up his claim for the full amount thereof, without reference to the value of his collaterals, and that such creditor is entitled to dividends on his entire claim out of the general fund just the same as unsecured creditors are. It is likewise sought to fortify such position by referring to the statutes quoted from Missouri and further by the general rule in administration of estates that there is no privity between administra-

tions granted in different States.  McGarvey v. Darnall, 134 Ill. 367.

We regard each suggestion made and authorities cited, entirely inapplicable to a case of this character.

Collateral security is in the hands of the creditor by the act of a person who has the full dominion of his property. When he dies this dominion passes under control of the laws of the land.  By our statutes a person who proves his claim at the end of the second year after letters of administration granted, is as diligent as the person who proves his claim on claim day.  Section 71 of Chapter 3, Hurd's R. S. 1899, provides, that where the estate is insufficient to pay all demands the demands in any one class shall be paid *pro rata*. Such is and has been the policy of this State for many years in reference to estates administered here.  The rule that there is no privity between administrations of different jurisdictions does not sanction the idea that an estate is made up of as many independent funds as there are jurisdictions, so that some creditors may, by a species of equitable attachment, gain a preference over others, if the estate should be insolvent.  The rule merely goes to the extent of declaring that an administrator is only answerable to the court which appointed him; that if the estate is solvent in the ancillary administration, debts to home creditors will be paid there, instead of sending such creditors to the domicile, and that judgments recovered against a representative in one jurisdiction are not evidence against a representative holding by appointment in another jurisdiction.  Outside of such considerations, as a question of potentiality the estate of a deceased person is in substance one estate, even though it be spread through several jurisdictions where local laws may more or less temporarily disturb this conception. From the same conception flows the rule of law, that the administration at the domicile is the principal administration, and that all others are but ancillary and more or less subservient thereto, either as a matter of comity or of positive right.  Young v. Wittenmyre, 123 Ill. 303; Schouler's Executors and Administrators, Sec. 175.

From this conception flow many other rules in administration, such as that after the ancillary administrator has paid the debts of local creditors, if the court orders distribution of the residue, such distribution will be made in accordance with the laws of the domicile and not of the forum (Cooper v. Beers, 143 Ill. 25); that payment made to a domiciliary administrator by a non-resident debtor will be a good defense against a suit afterward brought by an ancillary administrator appointed after such payment (1 Woerner's Law of Administration, Sec. 161; Bull v. Fuller, 78 Iowa, 20); that the domiciliary administrator succeeds to the title of all the decedent's personal estate, wherever located, while an ancillary administrator's title is limited to such assets as are within the jurisdiction which appointed him. Vol. 13, Am. & Eng. Ency. Law (2d Ed.), 931. These rules we mention, not by way of decision, but by way of illustrating the views held by courts and text writers as logical deductions from the conception that a deceased person's estate is substantially one estate, even though the *situs* thereof may be in many jurisdictions.

The chief object of ancillary letters is the protection of local creditors; when these have been paid, it is the duty of the ancillary representative to transmit the balance to the principal administrator for disposition by the courts of the domicile. Young v. Wittenmyre, *supra;* 1 Woerner's Law of Administration, Sec. 167. But this rule holds only in case the estate, as a whole, is solvent; if insolvent, local creditors are only entitled to a *pro rata* dividend, measured by all assets and all liabilities, although the ancillary representative has sufficient funds in his hands to pay such creditors. Dawes v. Head, 3 Pick. 128; Davis v. Estey, 8 Pick. 475; 1 Woerner's Administration, *supra;* 2 Kent's Commentaries, Sec. 434. The law of Missouri found in the quoted sections 264 and 265 is only a statutory rule in recognition of this principle, as Mr. Woerner observes in the paragraph above quoted. In the aim at the principle of equality in distribution of insolvent estates some courts have denied the right of domiciliary creditors to prove their claims in the ancil-

lary administration. Barry's Appeal, 88 Pa. St. 131; Churchill v. Boyden, 17 Vt. 319. Other courts permit non-resident as well as resident claimants to prove their claims against the ancillary estate, leaving the question of payment of claims to be dealt with afterward, when the solvency or insolvency of the whole estate is to be scrutinized. Miner v. Austin, 45 Iowa, 221. (In Rosenthal v. Renick, 44 Ill. 202, the Supreme Court of this State follows the latter rule; however, the question of distribution was not up for consideration.) The facts in Miner v. Austin were: The intestate died in Illinois and letters of administration were issued on his property here. He also left property in Iowa to the amount of $6,000, and letters of administration were issued there. The claimants who were residents of Massachusetts filed a claim to the amount of $60,000 against the estate in Illinois, which was allowed here. A claim by a resident of the State of Iowa for the sum of $2,000 had already been allowed against the ancillary estate. The Massachusetts claimants asked the allowance of their claim in Iowa; the lower court refused to allow the claim. This order was set aside by the Supreme Court. The court said:

"But the case we have before us is one where the ancillary administration is insolvent (or will be, if the plaintiff's claim is allowed, as we held it should be), and there is no evidence as to whether the principal estate is solvent or insolvent. If it is solvent, it is clear that plaintiffs whose claim has been allowed against it should receive their payment from it. But if it is insolvent and can not pay as large a percentage as the ancillary estate could pay if no claims were allowed against it except those which are allowed against it alone, then the plaintiffs would be entitled to share in the ancillary estate; and inasmuch as this may happen, we hold that the Circuit Court erred in disallowing the claim. But justice would seem to require that they should not, in the aggregate, receive a larger percentage than those whose claims have been allowed against the ancillary estate alone."

This language is as applicable to a principal administration, as to an ancillary one.

We have no means of knowing the precise grounds upon which the Probate Court of St. Louis awarded the 12.44 per cent to plaintiffs in error; nor do we regard this fact as important. The estate was insolvent in both jurisdictions as a matter of fact, whether the Missouri court knew it or not. In no view can the order of the Missouri court bind assets of the Ramsay estate further than assets under its control; it may be, if the Illinois estate could not have paid all of the claimants except plaintiffs in error as large a per cent as was paid to plaintiffs in error in Missouri, that they would be entitled to hold what they received by virtue of the order of a court of competent jurisdiction; on that question we express no opinion. But so long as the estate was insolvent in both jurisdictions, the true legal effect of the order of payment to plaintiffs in error was this : By reason of the insolvency of the entire estate, there was due plaintiffs in error only a *pro rata* dividend when the final report was made by the Missouri administrator, and the 12.44 per cent was part payment of this share. Such is the precise import of the Missouri law (quoted in the statement of facts); from its provisions no intended preference on behalf of any claimant can be gathered, not even on behalf of resident creditors. Equality among all creditors is the aim of that law. The insolvency of the estate in Illinois was, without question, brought to the attention of the Missouri court by the defendant in error; that court, perhaps, being unable to say that the 12.44 per cent would do more than pay plaintiffs in error their *pro rata* share in the entire estate, ordered distribution of the amount on hand to the persons who were before the court. This payment had in view, as far as it was practicable at that time, the condition of the entire estate, wheresoever located; but if that be not so, we hold with the Iowa court, that in the distribution of the assets within our own jurisdiction, justice would seem to require that a person who proves up a claim against an ancillary estate and receives a dividend from such estate is to be postponed to the extent of that dividend in the distribution of the assets in the principal administra-

tion, the entire estate being insolvent. 13 Am. & Eng. Ency. of Law (2d Ed.), 937, 938; Hays v. Cecil, 16 Lea (Tenn.), 160; Lawrence v. Elmendorf, 5 Barb. 73.

The ruling of the Circuit Court being in accordance with the views herein expressed the judgment is affirmed.