[No. 3370.]

RANDOLPH v. PROWERS, Administrator.

1. EXECUTORS AND ADMINISTRATORS—*Sale of Decedent's Realty.* So long as there is personality sufficient to meet the liabilities of a decedent's estate, resort may not be had to the realty.

A sum of money was paid by the executor of the husband, deceased, to the administrator of the deceased wife. The husband had survived the wife, and inherited one-half her estate. The sole devisee under the will of the husband consented to the payment mentioned, and relinquished all right to share therein. The fund was largely more than sufficient to discharge all the liabilities of the wife, and the expenses of administration of her estate. But the administrator, having distributed the greater part of the fund, then applied for leave to sell the realty left by his intestate, to discharge certain liabilities, principally expenses of administration. It was held, on objection by the devisee of the husband, entitled as such devisee to one-half the lands in question, that she never having consented to the distribution of the fund in question, the administrator's petition must be denied.

King, J., and Scott, P. J., dissented.

2. —— *Petition to Sell Realty*, must set forth the facts which make it necessary to resort thereto.

3. —— ADMINISTRATOR—*Duty of One Dealing With.* A distributee who has relinquished the right to share in a sum of money paid to the administrator is not under duty to supervise his action in the application of the fund. He may justly assume that he will faithfully discharge the duty imposed upon him by the law.

4. AGREEMENT—*Understanding of Party.* The understanding of one of the parties to a transaction, not shown to have been mutual, creates no liability on the part of the others.

5. COURT OF APPEALS—*Jurisdiction—Matters Not in Issue.* In an appeal from the decree of the district court directing the sale of an intestate's lands to pay expenses of administration, this court has no authority to revise the order of the county court making allowances to the administrator for commissions and fees, which appears in the record, merely as a piece of evidence, under which no one is complaining.

*Appeal from Bent District Court.* HON. HENRY HUNTER, Judge.

Mr. O. G. HESS, for appellant.

Mr. ALLEN M. LAMBRIGHT, Mr. GEORGE A. KILGORE, for appellee.

CUNNINGHAM, J.

The facts in this case, so far as we deem it necessary to state them, are about as follows: Amy Kessee died in Bent county, in 1905, leaving her surviving Daniel Kessee, husband, and six adult children by a former marriage, as her sole heirs. Daniel Kessee was appointed administrator of his wife's estate, but died before the final settlement thereof. Thereupon, John W. Prowers, son of Amy, was appointed administrator *de bonis non* of the estate of the said Amy, and O. G. Hess was appointed executor of the will of Daniel Kessee.

Mary E. Randolph, sister, was made sole beneficiary under the will of the said Daniel Kessee. After assuming the duties of administrator of his

mother's estate, Prowers, as administrator, filed a claim in the probate court, in favor of his mother's estate, against the estate of Daniel Kessee, said claim being for upwards of $46,000. Before a hearing was had upon said claim, a settlement or compromise was reached between Hess and Prowers, as executor and administrator of the respective estates. The conditions of the proposed compromise as submitted by them to the probate court, was as follows: (We quote from the petition filed in the probate court by Prowers, wherein he asks for authority to make the compromise.) "That the said claim, so filed, can be paid and compromised between the two representatives of said estates for the sum of $9,400, which said sum, if said compromise be made, will be paid by the said O. G. Hess, in *his representative capacity* as executor, to the said John W. Prowers, *in his representative capacity as administrator*, in full settlement, accord and satisfaction of said claim so filed against the estate of said Daniel Kessee." The italics are our own. Petitions were filed by the executor and by the administrator, and appropriate orders entered thereon by the probate court, whereby the executor and administrator of the respective estates were authorized and empowered to consummate the tentative compromise agreement, which was accordingly done, Hess, as executor of the estate of Daniel Kessee, paying to Prowers, as administrator of the estate of Amy Kessee, the $9,400. Immediately upon receiving the $9,400, Prowers seems to have distributed same among the children of Amy Kessee, of which he was one, reserving, however, $600 therefrom to meet, as he says, one-half of the expense of admin-

istering the estate of Amy Kessee. This distribution appears to have been made by authority, or order permitting the same, of the probate judge.

Appellant, Randolph, as sole legatee and devisee under the will of Daniel Kessee, who survived his wife, Amy, became and was entitled to one-half of the Amy Kessee estate. She, in addition to consenting to the payment of $9,400 from the Daniel Kessee to the Amy Kessee estate, in settlement of the $46,000 claim, relinquished all right that she might have had as distributee in and to that sum, after same had been paid Prowers, as aforesaid. Amy Kessee possessed, at the time of her death, certain real estate, but aside from the claim against the Daniel Kessee estate, she died possessed of but little cash or personal property—not sufficient to meet the expenses of administering her estate.

Immediately upon completing the compromise heretofore referred to, Hess and Prowers simultaneously gave notice, in due form, of their purpose to make final settlement; from which it is reasonable to suppose that Prowers had no thought, at that time, of resorting to the real estate of which his decedent died possessed, for the purpose of realizing money to meet the expenses incident to the closing up of the estate of which he was administrator. Hess carried his purpose into effect, and was discharged, but Prowers, upon presenting his final report, which showed debts and expenses in excess of cash then on hand, asked for, and over appellant's objection, was granted a continuance or further time to make settlement. At or about the same time he presented his petition to the probate court, in the customary form in the main, for leave

to sell real estate. Appellant, Randolph, being entitled to one-half of this realty (unless it should be subjected to the debts of the estate) and by law being, upon the death of Daniel Kessee, vested with the title thereto, unsuccessfully resisted, in the probate court, Prowers' petition to sell the real estate. She based her objection upon the contention that the petition on its face (which set out all the matters pertaining to the aforesaid compromise) showed that ample cash had come into the hands of the ad-. ministrator to meet all debts, including the expense of administration. She took an appeal to the district court, and again judgment went in favor of petitioner, authorizing him to sell so much of the real estate as was necessary to meet the liabilities, (mostly costs of administration) of the estate remaining unpaid. These are the substantial facts. Other minor contentions and unimportant facts have been purposely omitted.

The controlling question for our determination is: had the probate or district court jurisdiction to order the sale? It is elementary that so long as there is cash or personal property sufficient to meet the liabilities of the estate, resort may not be had to the realty. It is equally well understood that the right to sell real estate, under the circumstances now under consideration, is statutory, and in order to confer power or jurisdiction on the probate court to grant it, the petition must set forth the facts which make it necessary to resort thereto. On these two propositions it is unnecessary to cite statutes or authorities.

Counsel for appellee seem to contend that the $9,400 was, in effect at least, paid over to Prowers,

not in his representative capacity, but directly to the heirs of the said Amy. The record is clearly against this contention. Not only do the petitions and decrees pertaining to the compromise negative this contention, but Prowers, as administrator of the estate of Amy Kessee, presented to and had allowed by the probate court his final report, wherein is contained an item of $564 in his favor, or a credit to himself as fees or commission for collecting this self-same $9,400.

If further evidence were required to show that it was not the understanding of the parties at the time of the compromise that the Daniel Kessee estate, or Mrs. Randolph, was to pay a further sum for the purpose of meeting the expenses of settlement of the Amy Kessee estate, we find the following from the receipt which Prowers, as administrator, gave to Hess, as executor, upon the payment of the $9,400: ''And I hereby, in consideration thereof, release, discharge, and forever quit claim unto the said executor, and to the estate of Daniel Kessee, deceased, any and all claim which the estate of Amy Kessee, deceased, has against the estate of Daniel Kessee, deceased, on account thereof, and on account of any and all other claims arising in any manner whatsoever.''

Mr. Hess gave the following testimony:

''Furthermore, John W. Prowers told me in the presence of all the others, that if they would allow him to take out the letters of administration, he would charge nothing for his services. He said so more than once. I did not agree that this $9,400 should be distributed to the heirs, and Mrs. Randolph pay her portion of the administration fees. I never

knew they wanted her to pay anything of this until after I had made final settlement of the estate of Daniel Kessee.''

Mr. Prowers was called to the stand twice after this testimony had been given, by Mr. Hess, but he nowhere denied the statement made by Hess that he had offered to administer the estate without charging anything for his services, and the only denial that he made or attempted as to Hess's agreement to pay half of the expenses was the answer he made to a question propounded to him, and which we have hereinafter quoted in full.

Counsel for appellee say in their brief:

''The appellant knew that there was no other property out of which these debts could be paid. When she made the agreement and had the court order the payment of the $9,400 to the Prowers heirs, she entered into an agreement of which the sale of the land for the payment of these debts is really a part.''

In other words they seek to invoke against appellant the doctrine of estoppel. There is no evidence of such knowledge upon the part of appellant, but if there had been, it was not her duty, after seeing that the $9,400 was paid to the administrator of the Amy Kessee estate, to keep a strict surveillance over Prowers to see that he obeyed the law in the matter of its distribution and application. Having relinquished her interest or claim as distributee in and to that particular fund, appellant had a right to assume that Prowers would faithfully and properly discharge the duties imposed upon him by law. Not until it was sought to divest her of her property, was it incumbent on her,

or even proper for her to interpose objections. Nor
does it any where appear in the record that ap-
pellant "*Had* the court order the payment of the
$9,400 to the Prowers heirs."

Furthermore, Mrs. Randolph can be held lia-
ble for one-half the expense incident to a settle-
ment of the Amy Kessee estate only upon the theory
that she has by agreement consented to be so bound.
If she made an enforcible agreement of that char-
acter, directly or by her attorney, then such con-
tract constitutes a chose in action which is a per-
sonal asset of the estate to which resort must be
had rather than to the real property of the estate.
Hence it follows that the decree ordering the sale
of the real estate was improper, even if the theory
advanced by appellee be conceded.

As has already been observed, the claim for
$46,000 was never brought on for hearing. Suppose
it had been brought to trial, resulting in a judg-
ment in favor of the estate of Amy Kessee and
against the estate of Daniel Kessee for $9,400 and
said judgment had been regularly and duly satisfied
by the payment thereof; can it be contended, under
such circumstances, that the administrator of the
Amy Kessee estate would have had authority to
make distribution of the proceeds of such judgment,
or that such authority could have been conferred
upon him by the probate court, and thereafter to
resort to the real estate to pay his commission for
collecting said judgment and other expenses of ad-
ministration? The question answers itself. The
payment of the $9,400 as a result of a compromise
voluntarily entered into by all the parties concerned,
and approved by the probate court, in no wise

changes the character of the fund, or the law applicable thereto, unless, as counsel for appellee seem to contend, some enforcible agreement was made and entered into contemporaneously with the compromise, whereby the estate of Daniel Kessee was charged with one-half of such expense. It would have been a very easy matter, if this had been the understanding of both parties at the time of the compromise, to have inserted a provision in the written instrument pertaining thereto. But, we find no such provision. An attempt seems to have been made by appellee on the hearing in the district court to prove that an oral agreement to that effect was in fact made, but the nearest approach to sustaining his contention in this behalf was the testimony of John W. Prowers. This question was propounded to said Prowers:

"Q.   Did Mr. Hess say anything about who was to pay the other half? (Meaning the half of the expense of administering the Amy Kessee estate.)

"A.   Well, he was to pay the other half out of the Daniel Kessee estate, *was my understanding at the time.*"

This, of course, is quite insufficient to create a liability, even granting that oral testimony was admissible to vary the terms of a written compromise agreement. It was not sufficient that Prowers should have so understood the matter, but, in order to enforce such an agreement, even granting Hess had the authority to bind his client by an oral agreement, which involves two propositions not necessary here for us to determine, it was incumbent on appellee to show that this understanding was mutual. There is nothing in the record to show that Mary E.

Randolph was present in the probate court at any time during the various proceedings there had, and hereinabove referred to. On the contrary, there is evidence tending to show that she was not present, inasmuch as the tentative agreement of compromise was $9,000, originally, and Hess, the executor of the Daniel Kessee estate, of which Mrs. Randolph was the sole beneficiary, raised the amount $400, saying that he would take chances on his client ratifying his action in that behalf.

There can be, to our minds, no more conclusive evidence that Hess, on behalf of Mrs. Randolph, did not contemplate, at the time of the consummation of the compromise, that further demands would be made on his client for expense money, than the evidence regarding the $400 which he added to the $9000 which had theretofore been discussed, as the amount to be paid. In view of the division of the court in this case, the writer of this opinion feels warranted in setting out the testimony rather fully on this point, quoting entirely from the testimony of witnesses for appellee, and giving the same literally as it appears in the abstract. Prowers, the appellee, gave the following testimony concerning the $400:

"Was present during all conversations. Mr. Hess said he would give $9,400. That he could not give any money for attorneys fees, but would increase it $400. $250 for Lambright, and $150 for Kilgore. (The attorneys for the Amy Kessee estate.) Nothing was said as to what it was for except in that way. He could not give it, as he thought his client would not allow him to; but he would raise it $400 and it could be used for that purpose."

We take it there can be no serious controversy that the witness here meant by the phrase, "it could be used for that purpose", that it could be used for paying fees of the attorneys for the Amy Kessee estate, which, of course, is a legitimate part of the costs or expenses of the administration of an estate.

George A. Kilgore, one of the attorneys for the Amy Kessee estate, testified as follows:

"Was present during all conversations. The conversation prior to coming into court for their allowance was $400 added to the $9000 which the Prowers heirs were to get, was to be paid, $250 to Lambright and $150 to me, as part compensation."

This evidence, to our minds, so clearly establishes the understanding of all the parties, viz; that while Mrs. Randolph would not consent to pay any of the costs or expenses, nevertheless, her attorney would, rather than see the proposed compromise fail, assume the responsibility of raising the whole amount from $9,000 to $9,400, and then permit the Amy Kessee heirs to apply the $400 on the costs and expenses, if they saw fit so to do, that to further discuss this feature of the case would only result in obscuring a perfectly clear situation.

As we understand the position of our brothers who have found themselves unable to concur with us, it is this, in part, at least:

The $9,400 was no part or portion of the estate of Amy Kessee, and therefore John W. Prowers ought not to have charged, and the probate court ought not to have allowed him the $564, or any other sum, by way of commission on account of the fund flowing from the compromise to the heirs of Amy Kessee; further, it is suggested that the error of

the probate court in this behalf should be by us corrected, by appropriate modifications of the decree of the trial court. To our minds, we are wholly without authority in this case to enter a decree regulating the commission or fees to be allowed by the probate court to the administrator, Prowers. But, if we are wrong in this position, certainly we may not with propriety adjudge a certain transaction, which came into this record merely as a bit of evidence, introduced for the sole purpose of showing how both the probate judge and the administrator of the Amy Kessee estate regarded the fund in question, as erroneous, and then proceed to correct the error when there is no one before this court making any complaint whatever in that behalf. If it was error for Prowers to charge and the probate judge to allow the $564 as a commission to Prowers, the administrator, for the collection of the $9,400, it was a wrong perpetrated by Prowers and the probate judge against the brothers and sisters of the said Prowers, and in no way concerns the parties to this case. Moreover, as we have already pointed out, these relatives of John W. Prowers not only have made no complaint of the action of Prowers or the probate court, with reference to this fee or commission, but it may reasonably be supposed that they, with full knowledge of all the facts, have approved the same. From this feature of the case, we are impressed that if anyone is in a position to plead estoppel, it would be the appellant, rather than the appellee.

Counsel for appellee make the following statement in their brief:

"At the time of the compromise of the claim

of the Amy Kessee estate against the Daniel Kessee estate, the appellant, in legal effect, had in her possession $18,000 of money belonging to the appellee. * * * Mary E. Randolph retained her half, which was just as much a part of the estate of Amy Kessee, as the other half was, or could ever become. The other half she paid, through the hands of the administrator, to the children of Amy Kessee.''

To our minds the above contention is wholly unwarranted and is refuted completely, as it seems to us, by the testimony of Mr. Kilgore, a witness called on behalf of appellee, and who appeared in the court below, and appears in this court, as his attorney. Mr. Kilgore gave, on cross examination, the following testimony, which we take from the abstract:

''There was never any agreement to pay $18,000. The agreement was to pay $9,400. You (meaning Mr. Hess, attorney for appellant) never agreed that your estate was owing anything. Always protested your innocence; while you were willing to plead guilty to the charge of owing us, to the extent of paying it, you was willing to compromise on that basis.''

A careful reading of the excerpt, which we have taken from the brief of counsel, will make it manifest how difficult it is, even for counsel of appellee, to discuss this controversy without unconsciously admitting that the money that was paid over, the $9,400, was in truth and in fact the property, not of the heirs of Amy Kessee, but of the estate of Amy Kessee, and as a part of her estate, of course, it was the fund from which expenses and costs must be paid before the same was distributed. Another

error into which counsel unwittingly fall, is the assumption that Mary E. Randolph had anything, at the time the compromise was made, in her possession, belonging to the estate of Amy Kessee. The estate of Daniel Kessee had not yet been settled, and the claim was against his estate. Moreover, there is not a word in the entire record that will indicate that Mary E. Randolph has ever received a dollar from the estate of Daniel Kessee. The whole of that estate may have been required to meet the liabilities, except the interest which she yet retains in the realty of the Amy Kessee estate.

Counsel for appellee further say: "In the consideration of this case, it may be well to keep in mind the following facts, which are undisputed, or if disputed, were judicially settled in the court below. * * * That the land in question, subject to the payment of the said claim, is owned by the Prowers children, being the children of Amy Kessee by a former husband, the one-half, and the other half by the respondent below, appellant here, who derived such interest by will of Daniel Kessee, who inherited it from his wife, Amy Kessee." As a legal proposition, we can see no reason why this fact should be kept especially in mind. It was unfortunate for the Prowers children that their mother did not outlive their step father. It may be conceded that the statutes regulating the descent and distribution of property, and the law affecting the distribution of property by will, often work palpable injustice. But to courts, these laws are as inexorable as the natural law that fixed the order of the taking off of Amy and Daniel. Had Daniel first been gathered to his fathers, we apprehend the Prowers heirs

would have been reconciled to the ways of Providence, and fairly well satisfied with the statutes of Colorado applicable to this case.

There is nothing in the record to indicate how Amy Kessee came into possession of the land in question, or how long she and Daniel were husband and wife. It may well be, so far as anything to the contrary appears in the record, that the land was a gift from Daniel to Amy, or, its value may have been due to the efforts of Daniel. Moreover, he may have, at his own expense, raised and educated the Prowers children from infancy, and otherwise provided handsomely for them. His act in willing his property to his sister may have been justified not only by law, but by good morals. However, these are matters entirely outside the case, and with which this court has nothing whatever to do.

For the above and foregoing reasons, the judgment of the district court should be reversed, and the case remanded with directions to said court to enter an order denying the petition of appellee, and taxing the costs to him, which is accordingly done.

*Reversed and Remanded.*

SCOTT, P. J. and KING, J. dissent.

KING, J. dissenting:

I am unable to concur with the views expressed by the majority of the members of this court in their opinion herein, or with their conclusions, which seem to me to sacrifice justice to a technicality, and in which a strict construction of, and compliance with the terms of the statute are needlessly enforced, to the end that a fraud is permitted and perpetuated which may and should be avoided by the proper ap-

plication of the principles of equity, which appear to have been recognized and applied by the trial court.

I accept the statement made in the opinion of the court that the controlling question for our determination is whether the probate or district court had jurisdiction to order the sale of the real estate to pay the debts of the estate and the expenses of administration, supplementing that statement, however, by saying that such question is the only ultimate question for our consideration and determination, all other matters being incidental or collateral to the main subject.

It is conceded that at the time the petition to sell was filed, presented and granted, there were not sufficient funds in the hands or under the control of the administrator to pay such debts and expenses, nor personal property from which the necessary funds could be secured; but, it is contended that sufficient funds had been paid to the administrator, and that he had improperly and prematurely distributed such funds to certain of the heirs, and for that reason the court was without authority or jurisdiction to order a sale of the real estate to satisfy the remaining unpaid debts and costs of administration.

The right and power to sell real estate in course of administration is statutory, and the provisions of the statute must be substantially complied with. Section 7168 Rev. Stat. 1908, gives the power to the county court to order sale of real estate "whenever, after the inventory and appraisement of the personal estate, * * * it shall appear that the personal estate, income and annual rents, issues and profits

of the real estate of any decedent  *  *  *  is insufficient to discharge the just debts allowed against his estate,  *  *  *  expenses of administration, and all other sums required by law to be paid out of such estate.''   Section 7170 requires the administrator to present to the county court his petition "setting forth the condition of the estate, the amount of legacies, debts and claims against such estate, so far as the same are known, and particularly describing the whole of the real estate of such estate, and the nature of the title of the decedent,  *  *  *  the value of the several parcels of said real estate, and the encumbrances thereon, if any, the facts and circumstances upon which the petition is founded, and the purpose for which sale is deemed necessary or proper'', and also requires such petition to set forth the names and residences of the heirs at law, legatees and devisees of the testator or intestate, and that the petition shall be verified by the oath of the administrator.  The sections following provide for order to show cause and service thereof. Section 7178 provides that if the county court is satisfied, after a full hearing upon said petition, that proper and legal grounds exist for the sale of the whole or any portion of the real estate of such decedent, the county court shall make an order directing the sale, and the manner in and the conditions upon which the sale shall be made.

A careful examination of the petition filed by the administrator in the case at bar shows that every one of these jurisdictional requirements was not only substantially but technically complied with, and thereby jurisdiction to try, and upon hearing make the order for such sale, if found that proper and

legal grounds exist therefor, was unquestionably vested in the county court.

In addition to the matters required to be set forth in the petition, and which were set forth as we have stated, the petition contained a complete statement of the matters pertaining to the estates of Amy Kessee and of Daniel Kessee, mentioned in the opinion of the court, including the receipt of $9400 by the administrator, his application for authority to distribute the same and the order of the court directing distribution thereof, and the actual distribution to the heirs of Amy Kessee in the presence of the judge of said court, the executor of the will of Daniel Kessee and the attorney at law and in fact of Randolph, the appellant herein. And as some of these allegations have been omitted from the majority opinion, evidently treated as "unimportant", but which seem to me to be of vital importance, reference will be made thereto. These allegations were that the estate of Amy Kessee, of which Prowers was administrator de bonis, and the estate of Daniel Kessee, of which O. G. Hess was executor, had been in course of administration in the same court, Daniel Kessee, husband of said Amy, having been administrator of his wife's estate prior to the time of his death; that upon the death of the said Daniel and the appointment of Prowers to succeed him as administrator, (Prowers being the son and one of the heirs of Amy) he filed in said court against the estate of Daniel Kessee a claim of $46,000, besides interest, in favor of the estate of his mother; that Mary E. Randolph, appellant herein, and sister of said Daniel Kessee, was sole devisee of the will and owner of the estate of Daniel Kessee,

and as such devisee, the owner of one-half of the
estate of Amy Kessee, subject to the payment of
the debts and costs of administration of the last
named estate; that negotiations were had between
the said administrator and the executor and Ran-
dolph, by which, the executor with the consent of
Randolph, offered to pay to the administrator the
sum of $9400 in settlement of said claim, to which
amount the said Randolph agreed to relinquish all
right, interest and claim, and that said sum might
be *distributed by the said Prowers to the children
of Amy Kessee* by her first husband. This offer
was accepted by the administrator, and petitions
were filed simultaneously by the administrator and
by the executor in their respective estates, reciting
the negotiations and praying approval thereof. At
the hearing of the petition of the administrator,
Hess, the executor of the will of Daniel Kessee and
attorney in fact for Randolph, was present. That
petition recited, among other things, that on said
claim the estate of Amy Kessee would be justly en-
titled to at least $18,800 from the estate of Daniel,
one-half of which would pass to Randolph and the
other half to the children of Amy, and was the basis
for the compromise by the payment of $9400 to the
children of Amy, heirs of one-half of the estate, and
contained this allegation: "Your petitioner further
represents that there *are sufficient lands belonging
to the estate* of the said Amy Kessee, deceased, out
of which to pay all just claims that may be allowed
against the said estate of said Amy Kessee, de-
ceased." This quotation will show that at the time
this petition was heard, Randolph, who was present
through her attorney in fact, knew that the lands

of the Amy Kessee estate were, if necessary, to be subjected to the payment of the debts and claims against that estate. This allegation was followed by a prayer for an order authorizing him "to pay out the said sum of $9400 to the said children of Amy Kessee, share and share alike." The petition was granted and the order made which recited that said Randolph consented to said distribution; and the administrator, at that time, in the presence of the judge and of the executor and attorney in fact for Randolph, drew his checks and distributed the said $9400 to such heirs, share and share alike, to which no protest was made.

The orders of the court permitting such distribution were made on the 16th day of May, 1907. The petition for sale of the real estate was filed August 24th, 1907, and heard and granted on the 8th day of February, 1908, after due notice to all interested parties. To said petition appellant herein filed answer which did not deny any of the allegations of the petition. It demurred to the sufficiency of the petition, and alleged that the estate at that time and at the time of the filing of the petition had ample personal assets to pay all debts and expenses without resort to real estate, and alleged the payment by said executor to said administrator of the sum of $9400 already alleged and set forth in the petition. The allegation that the administrator had funds or personal assets at the times named had no support whatever in the testimony, as it was alleged and not denied, and fully established by the evidence, that the said $9400 had been distributed, and that there were no other personal assets except about $200 derived from rentals which had already been

exhausted in the payment of other debts. So that the only question to be determined by the court was whether, under the facts as stated in the petition, the administrator must be charged as still having in his possession the said sum of $9400, or a sufficient portion thereof to pay the debts and costs of administration of the estate. Upon this question the county court, after finding the existence of unpaid debts and expenses, made this finding:

"The court finds as a fact that the $9400 mentioned in the petition herein, and evidence offered, was not to be applied to the payment of any claims or indebtedness or expenses of administration, and that the respondent, Mary E. Randolph, so agreed, and that she is now estopped from setting up any demand that the said $9400, or any part thereof, be applied to the payment of the indebtedness aforesaid."

and thereupon ordered the sale of the real estate, from which order Randolph appealed to the district court. The evidence in the district court, in addition to the petitions and orders of the county court and the receipts filed therein, contained documentary evidence from the county court showing the inventory filed by Daniel Kessee as administrator of the estate of his deceased wife, Amy, in which the real estate herein asked to be sold was the only asset reported as belonging to said estate, omitting any reference to his indebtedness of $46,000 thereafter made as a claim against his estate; also showing the report and inventory of Prowers, administrator *de bonis*. Oral testimony was also introduced, which was to some extent conflicting, and the trial court apparently discredited some of the statements of

Hess, but in that respect this court is bound by the finding of the trial court, even as to matters which were not directly disputed. The court had the right to believe all or none of his testimony.

There can be no question that real estate of a decedent cannot be ordered sold to pay debts and expenses of administration unless there be an insufficiency of personal assets at the time the petition for sale is presented and heard; nor, that upon petition of the administrator the order will be refused if he has come into possession of sufficient funds with which to pay such debts and expenses, and has unlawfully or wrongfully expended the same or diverted it from its proper use so that such personal assets have been by him vested or lost through his fault. But, under such circumstances, resort may and doubtless should be had to the administrator and his bondsmen to recover the money so lost to the estate. But that rule is not applied with strictness except where the money has been distributed through the fault of the administrator, and not then, although the distribution may have been irregular, if not wrongful or fraudulent, but with the knowledge and consent of the heirs, devisees or other persons interested in the estate. And where such payment or distribution has been made by the procurement or with the knowledge and consent of any interested party, such party will not be heard to say that the distribution was wrongful, but will be estopped from so saying. In my opinion the doctrine of equitable estoppel as against the appellant herein was properly applied by both trial courts, and that therefore, the judgment appealed from should be affirmed.

That the doctrine of equitable estoppel may be applied in cases of this character is shown by numerous authorities, including our own appellate courts.—*N. Y. Life Ins. Co. et al. v. Brown, Executor et al.,* 32 Colo. 365-379; *Pershing et al. v. Wolfe et al.,* 6 Colo. App. 410-418; *George B. Foster's Executrix v. H. M. Stone, Adm. et al.,* 67 Vt. 366; *Boerum v. Schenck,* 41 N. Y. 182-190; *Lyon v. Lyon,* 8 Ired. Eq., 201-206; *Haden v. Haden,* 7 J. J. Marsh, 168; *Grady v. Porter,* 53 Cal. 680; *Axton v. Carter,* 141 Ind. 672-675; *Young et al. v. Wittenmyre,* 123 Ill. 303-309; 2 Woerner Adm., star pp. 679-1242.

In the case of the New York Life Insurance Company et al. v. Brown, executor, et al., *supra,* the court, after referring to section 4798 Mills' Ann. Stat., which permits the court to direct the administrator to distribute the surplus remaining in his hands among the heirs of the deceased "after the payment of all debts allowed against the estate of any decedent and the expenses of administration", said:

"It is true that the executor of an estate can make no distribution until after the estate indebtedness is paid, but that does not prevent a devisee from disposing of his interest subject to the payment of estate indebtedness, and if he does make such disposition he is bound thereby, and cannot subsequently require that the interest which he has disposed of shall thereafter be subjected to the lien of estate indebtedness, so as to protect his interest in any of the property which he still retains."

Applying that rule to the case at bar it will readily appear that, when in settlement of a large claim against the estate of which she was devisee,

appellant, Randolph relinquished to the heirs of
Amy Kessee all her interest in the $9400 paid as a
compromise of that claim and permitted its distri-
bution to said heirs, she cannot now require that
the interest which she so disposed of shall be sub-
jected to the payment of estate indebtedness and
costs of administration, so as to protect her interest
in the real estate remaining, and in which she has a
one-half interest subject to the payment of such
debts.

In *Pershing et al. v. Wolfe et al., supra,* being
an estate matter involving the rights of a minor, in
which the minor through her next friend alleged the
invalidity of certain proceedings in the county court,
and in which the doctrine of estoppel was invoked,
the court, after saying that the proceedings under
the original petition were regular but that the decree
was open to grave criticism as giving the adminis-
tratrix too great power, said:

"The nature of an estoppel does not preclude
its application wherever it tends to work out an
apparent equity and to do justice between the par-
ties. The infancy or the disability of the party
against whom the doctrine is invoked furnishes no
obstacle to its operation. It has been applied in
many cases where at the time of the occurrence the
person who is to be bound by the act was then com-
pletely under some recognized disability. It has
been applied in all classes of cases, but usually in
those where money has been received from the sale
of land or from some other source by one who was
the custodian of the person under disability, and
who applied the funds to the use and benefit of the
infant. Wherever this has been done, even though

.the procedure was irregular and void, the infant has been estopped to assert its illegality unless the pur-chaser can either be put in *statu quo* or the infant has made some offer of restitution which, if accepted, would leave the other unharmed.''

and the judgment of. the court below was reversed because that court refused to recognize and apply the doctrine of equitable estoppel as against the minor heir for whose benefit the money procured by the mortgage had been expended.

In the case at bar a claim of $46,000 against the estate of which appellant was sole beneficiary, was settled by the payment of $9400, upon the express condition that said sum should go to certain persons. This settlement was made for her benefit, and with her consent, and she has not offered to place said heirs in *statu quo,* and therefore, although the distribution made by the administrator may have been irregular, and void as to general creditors of the estate, appellant should be estopped from asserting such irregularities.

In the case of *Young et al. v. Wittenmyre, supra,* cited by counsel for appellant, the court recognized the proper application of the doctrine of estoppel, but refused to apply it for the reason only that the heirs were not instrumental in having the distribution made, knowing that an unpaid debt remained, and that the action of the administratrix in making such distribution was of her own free will and without being required either by the heirs or by the court, she voluntarily paid over money to the heirs which she ought to have retained for the payment of debts.

In the case at bar the evidence conclusively

shows that payment by the administrator was not voluntary; but that it was procured through the contract of compromise settlement made by appellant, directed by the court and actually distributed in the presence of appellant or her attorney in fact, in accordance with the terms of her agreement.

The other cases cited deal with the application of the doctrine of equitable estoppel as pertaining to estates and administration in many different phases, some of which go to the extent of holding that in case of a sale of real estate by an administrator to himself, although voidable at the election of the *cestui que trust,* yet the *cestui que trust* having received the proceeds of the sale, or any part thereof, with full knowledge of all the facts, thereby confirms and ratifies the sale, and cannot afterwards avoid it.

In Grady v. Porter, *supra,* involving the settlement of an executor's account pursuant to stipulation, to which proceedings plaintiffs were parties, appearing and consenting, the court held that the probate court might entertain and enforce the stipulation as well as any other court in reference to a matter of which it had jurisdiction, and that the said plaintiffs were, by said stipulation and the proceedings of the probate court had thereon, estopped and concluded, notwithstanding the claim that the executor had in his possession money and other property of the estate which he had omitted from his inventory and account.

A charge of $564 (the usual maximum allowance of six per cent. fixed by law) was made by the administrator and allowed by the county court and the district court for the collection of the $9400 from

the estate of Daniel Kessee. Propriety of this charge
is challenged, and has been the occasion of much
discussion by counsel, and in this court.  No other
charge was made by the administrator.  No objec-
tion was made or exceptions reserved in the lower
courts to the allowance of that charge, and whether
it was reasonable or permissible does not affect the
question of the jurisdiction of the court to order the
sale of the real estate, since, without regard to the
allowance of that amount, there was still a deficiency
of personal assets.

There seems to be slight if any occasion, and I
have no disposition to challenge the decrees of Prov-
idence or the operation of the natural law, to which
my brother who wrote the opinion of the court re-
ferred, because of the order in which Amy and Dan-
iel departed this life, although it does appear that
Daniel was neither unmindful nor neglectful of the
opportunity thus afforded him to finish the task he
had begun of appropriating to himself the patri-
mony of the children of his wife and forever alien-
ating it from them, by making his will, devising
everything to his collateral heir, the appellant here-
in.  His purpose to defraud the estate of his wife is
evidenced by his inventory disclosing only real es-
tate of the estimated value of $3600, and omitting
any mention of the item of $46,000 which he was
charged with having received from the sale of his
wife's lands and cattle, and all of which, by his will,
would have passed to the appellant but for the ac-
tive interference by the administrator.  Daniel's de-
mise gave Prowers a chance to save something from
the wreck of his mother's estate, the greater portion
of which his stepfather seemed still to grasp in

*mortmain,* and I am not willing to participate in a judgment which will take any part of the sum paid to the Prowers children in settlement of said claim, in order to relieve the lands of the Amy Kessee estate, in which appellant retains an interest, from her proper share of the debts and expenses of administration.

I am authorized to state that Presiding Judge Scott agrees with my conclusion that the judgment should be affirmed.

Decided February 13, A. D. 1912. Rehearing denied April 8, A. D. 1912.